# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

————————————

MICHAEL E. KELLY, FBOP CORP., RIVER CAPITAL ADVISORS, INC., PARK NATIONAL BANK, SAN DIEGO NATIONAL BANK, PACIFIC NATIONAL BANK, BANKUSA, NORTH HOUSTON BANK, MADISON STATE BANK, COMMUNITY BANK OF LEMONT, CITIZENS NATIONAL BANK, CALIFORNIA NATIONAL BANK,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

————————————

On Appeal from the United States Court of Federal Claims in Case No. 1:21-cv-01949, Judge Molly R. Silfen.

————————————

## BRIEF FOR DEFENDANT-APPELLEE
————————————

BRETT A. SHUMATE
   *Acting Assistant Attorney General*

GERARD SINZDAK
KELSEY FRASER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7235*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-7824*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

STATEMENT OF JURISDICTION ............................................................................... 1

STATEMENT OF THE ISSUES ..................................................................................... 1

STATEMENT OF THE CASE ......................................................................................... 1

      A.     Statutory and Regulatory Background ........................................................ 1

      B.     *Washington Federal* Litigation ...................................................................... 4

      C.     Prior Proceedings ......................................................................................... 6

SUMMARY OF ARGUMENT ........................................................................................ 9

ARGUMENT ..................................................................................................................... 13

I.     Standard of Review ................................................................................................. 13

II.    *American Pipe* Tolling Cannot Apply to Section 2501. ......................................... 13

      A.     Supreme Court Precedent Forecloses Application of *American Pipe* Tolling to Tucker Act Class Actions. ......................................................... 14

      B.     Plaintiffs' Contrary Arguments Have No Merit. ....................................... 17

             1.     Recent Supreme Court Precedent Has No Bearing on *John R. Sand*'s Binding Conclusion. ....................................................... 18

             2.     *CalPERS* Overruled *Bright* and Governs Here. .............................. 21

III.   The Court of Federal Claims Correctly Dismissed Plaintiffs' Takings Claims on the Merits. ............................................................................................... 26

      A.     Plaintiffs Have Not Stated a Takings Claim. ............................................ 26

      B.     Plaintiffs Lack Standing to Raise These Claims. ...................................... 30

C.  These Claims Are Precluded, In Any Event. ............................................. 32

IV.  The Court of Federal Claims Correctly Dismissed Plaintiffs' Breach of
Implied Contract Claims. ......................................................................................... 35

A.  *American Pipe* Tolling Cannot Toll Plaintiffs' Contract Claims
Even If Such Tolling Could Apply to Section 2501. ................................ 35

B.  Plaintiffs Fail to State a Claim for Breach of Implied Contracts............. 37

CONCLUSION ........................................................................................................... 41

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s)**

*Aly v. Valeant Pharm. Int'l Inc.*,
1 F.4th 168 (3d Cir. 2021) .................................................................. 24–25

*American Pelagic Fishing Co. v. United States*,
379 F.3d 1363 (Fed. Cir. 2004) ............................................................... 26

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ................................................................... 1, 7, 13, 37

*Ammex, Inc. v. United States*,
334 F.3d 1052 (Fed. Cir. 2003) ............................................................... 33

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ................................................................... 19, 20, 21

*Boechler, P.C. v. Commissioner*,
596 U.S. 199 (2022) ..................................................... 9, 14, 19, 24, 25

*Bowers Inv. Co. v. United States*,
695 F.3d 1380 (Fed. Cir. 2012) ......................................................... 32, 33

*Branch v. United States*,
69 F.3d 1571 (Fed. Cir. 1995) ........................................................... 29, 30

*Bright v. United States*,
603 F.3d 1273 (Fed. Cir. 2010) ................................................ 7, 8, 17, 22, 24

*Brooks v. Dunlop Mfg. Inc.*,
702 F.3d 624 (Fed. Cir. 2012) ................................................................ 38

*California Hous. Sec., Inc. v. United States*,
959 F.2d 955 (Fed. Cir. 1992) ......................................................... 27, 29, 30

*California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
582 U.S. 497 (2017) .......................................... 7, 9, 16, 17, 22, 24, 25

*City of El Centro v. United States,*
    922 F.2d 816 (Fed. Cir. 1990) ........................................... 38

*Collins v. Yellen,*
    594 U.S. 220 (2021) ...........................................2, 3, 4, 39

*Community Bank of N. Va., In re,*
    622 F.3d 275 (3d Cir. 2010) ........................................... 36

*Crown, Cork & Seal Co. v. Parker,*
    462 U.S. 345 (1983) ........................................... 7, 13, 36, 37

*D & N Bank v. United States,*
    331 F.3d 1374 (Fed. Cir. 2003) ........................................... 39

*Erickson Air Crane Co. of Wash. v. United States,*
    731 F.2d 810 (Fed. Cir. 1984) ........................................... 40

*Fairholme Funds, Inc. v. United States,*
    26 F.4th 1274 (Fed. Cir. 2022) ...........................3, 9, 27, 37, 38, 39, 40

*FloorPro, Inc. v. United States,*
    680 F.3d 1377 (Fed. Cir. 2012) ........................................... 16, 24

*Fort Bend County v. Davis,*
    587 U.S. 541 (2019) ........................................... 20

*Franchise Tax Bd. v. Alcan Aluminium Ltd.,*
    493 U.S. 331 (1990) ...........................................30–31

*Gaff v. FDIC,*
    814 F.2d 311 (6th Cir. 1987) ........................................... 32

*Golden Pac. Bancorp. v. United States,*
    15 F.3d 1066 (Fed. Cir. 1994) ...........................................27, 29

*Gould, Inc. v. United States,*
    67 F.3d 925 (Fed. Cir. 1995) ...........................................33

*Harrow v. Department of Def.,*
    601 U.S. 480 (2024) ...........................................19, 20

*Henderson ex rel. Henderson v. Shinseki,*
    562 U.S. 428 (2011) ................................................................. 21

*Irwin v. Department of Veterans Affairs,*
    498 U.S. 89 (1990) ................................................................. 14

*John R. Sand & Gravel Co. v. United States,*
    552 U.S. 130 (2008) ......................7, 9, 14, 15, 16, 19, 20, 21, 23, 24

*Johnson v. Railway Express Agency, Inc.,*
    421 U.S. 454 (1975) ............................................................ 35, 36

*Mallory v. Norfolk S. Ry. Co.,*
    600 U.S. 122 (2023) ................................................................. 19

*Mola Dev. Corp. v. United States,*
    516 F.3d 1370 (Fed. Cir. 2008) ............................................ 38, 39

*Phillips/May Corp. v. United States,*
    524 F.3d 1264 (Fed. Cir. 2008) ................................................. 34

*Resource Invs., Inc. v. United States,*
    785 F.3d 660 (Fed. Cir. 2015) ................................................... 34

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
    490 U.S. 477 (1989) ................................................................. 19

*Sebelius v. Auburn Reg'l Med. Ctr.,*
    568 U.S. 145 (2013) ................................................................. 21

*Sonus Networks, Inc., In re,*
    499 F.3d 47 (1st Cir. 2007) ....................................................... 33

*Soriano v. United States,*
    352 U.S. 270 (1957) ................................................................. 15

*Southern Cal. Fed. Sav. & Loan Ass'n v. United States,*
    422 F.3d 1319 (Fed. Cir. 2005) ................................................. 32

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ................................................................. 32

*Troy v. Samson Mfg. Corp.*,
 758 F.3d 1322 (Fed. Cir. 2014) ....................................................... 23

*United States v. Kwai Fun Wong*,
 575 U.S. 402 (2015) ........................................ 10, 14, 15–16, 20, 21, 23

*Walby v. United States*,
 957 F.3d 1295 (Fed. Cir. 2020) ...................................................... 13

*Washington Fed. v. United States*,
 26 F.4th 1253 (Fed. Cir. 2022) ............. 2, 3, 4, 4–5, 5, 6, 11, 26, 27, 30, 31, 32, 34, 36

*Wilkins v. United States*,
 598 U.S. 152 (2023) ........................................................................ 20

*Williams v. Boeing Co.*,
 517 F.3d 1120 (9th Cir. 2008) ........................................................ 36

*WorldCom Sec. Litig., In re*,
 496 F.3d 245 (2d Cir. 2007) ............................................................ 25

*Young v. United States*,
 529 F.3d 1380 (Fed. Cir. 2008) ............................................. 10, 16, 23–24

*Zarecor v. Morgan Keegan & Co.*,
 801 F.3d 882 (8th Cir. 2015) ..................................................... 36, 37

**Statutes:**

12 U.S.C. § 1455(*l*)(1) ....................................................................... 3

12 U.S.C. § 1719(g)(1) ....................................................................... 3

12 U.S.C. § 4501(4) .......................................................................... 39

12 U.S.C. § 4502(20) .......................................................................... 2

12 U.S.C. § 4503 ............................................................................. 39

12 U.S.C. § 4511(b) ........................................................................... 2

12 U.S.C. § 4617 .................................................................................... 2

12 U.S.C. § 4617(a)(2)–(3) ................................................................... 2

12 U.S.C. § 4617(a)(5) ........................................................................... 5

12 U.S.C. § 4617(a)(5)(A) ..................................................................... 3

12 U.S.C. § 4617(b)(2)(A)(i) .............................................................2–3

12 U.S.C. § 4617(b)(2)(D) ..................................................................... 3

12 U.S.C. § 4617(b)(2)(J)(ii) ................................................................. 3

28 U.S.C. § 1295(a)(3) ........................................................................... 1

28 U.S.C. § 1491(a) ............................................................................... 1

28 U.S.C. § 2501 .........................................................................1, 7, 9, 13

**Rule:**

Fed. Cir. R. 28(b) .................................................................................. 1

## Other Authority:

Restatement (Second) of Judgments (Am. Law Inst. 1982),
   Westlaw (database updated Oct. 2024) ........................................ 34

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5, but notes that *Blue Cross & Blue Shield of Kansas City Welfare v. United States*, Nos. 24-2317, 25-1027 (Fed. Cir.), raises the same legal issue—*i.e.*, whether *American Pipe* tolling can apply to 28 U.S.C. § 2501—as this case and has been designated a companion case.

# STATEMENT OF JURISDICTION[1]

Plaintiffs invoked the Court of Federal Claims' (CFC) jurisdiction under 28 U.S.C. § 1491(a). Appx87. The CFC dismissed the complaint for lack of jurisdiction and failure to state a claim. Appx18. Plaintiffs timely appealed. Appx431. This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

# STATEMENT OF THE ISSUES

1. Whether the Tucker Act's statute of limitations, 28 U.S.C. § 2501, is susceptible to the form of tolling established in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

2. Whether the Court of Federal Claims correctly dismissed plaintiffs' takings claims.

3. Whether the Court of Federal Claims correctly dismissed plaintiffs' contract claims.

# STATEMENT OF THE CASE

## A. Statutory and Regulatory Background

**1.** Congress created the Federal National Mortgage Association (Fannie Mae) in 1938 and the Federal Home Loan Mortgage Corporation (Freddie Mac) (collectively, the enterprises) in 1970 to support the national home mortgage system.

---

[1] Plaintiffs' statement of jurisdiction, statement of the issue, and statement of the case are either incorrect or incomplete. Accordingly, the government has included these statements in its brief. *See* Fed. Cir. R. 28(b).

*Collins v. Yellen*, 594 U.S. 220, 228 (2021).  Among other things, the enterprises

increase the liquidity and stability of the housing market by purchasing mortgages,

pooling them into mortgage-backed securities, and selling them to investors—thus

relieving lenders of the risk of default and freeing up capital for more loans.  *Id.*  The

enterprises operate as for-profit corporations owned by private shareholders.  *Id.*  But

their congressional origin has allowed them to benefit from the perception that the

government would step in in moments of financial trouble.  *Washington Fed. v. United

States*, 26 F.4th 1253, 1260 (Fed. Cir. 2022).

**2.**  When the nation's housing bubble burst in 2008, the enterprises took a

sizable hit.  *Collins*, 594 U.S. at 228–29.  Many feared an impending default, which

would throw the housing market into a "tailspin."  *Id.* at 229.

Congress responded by enacting the Housing and Economic Recovery Act of

2008 (HERA).  *Collins*, 594 U.S. at 229.  HERA created the Federal Housing Finance

Agency (FHFA) to regulate the enterprises and gave FHFA's Director the authority to

appoint FHFA as conservator or receiver of the enterprises in specified

circumstances.  *Id.*; 12 U.S.C. §§ 4502(20), 4511(b), 4617.  The statute sets forth

grounds upon which the Director may appoint FHFA as conservator or receiver,

including with the consent of the enterprises.  12 U.S.C. § 4617(a)(2)–(3).  HERA

provides that FHFA, as conservator or receiver, "immediately succeed[s] to—(i) all

rights, titles, powers, and privileges of the [enterprises], and of any stockholder,

officer, or director of such [enterprises] with respect to the [enterprises]." *Id.*

§ 4617(b)(2)(A)(i). In acting as conservator or receiver, FHFA is authorized to "take such action as may be—(i) necessary to put the [enterprises] in a sound and solvent condition; and (ii) appropriate to carry on the business of the [enterprises] and preserve and conserve the assets and property of the [enterprises]." *Id.* § 4617(b)(2)(D). HERA further states that FHFA, when acting as conservator, may exercise its statutory authority in a manner "which the Agency determines is in the best interests of the [enterprises] or the Agency." *Id.* § 4617(b)(2)(J)(ii).[2]

HERA also provides for limited judicial review of the decision to place the enterprises in conservatorships. *Washington Fed.*, 26 F.4th at 1260 (citing 12 U.S.C. § 4617(a)(5)(A)). The judicial review scheme provides that the enterprise may, within 30 days of the appointment, sue in district court for an order requiring the removal of the conservatorship or receivership. 12 U.S.C. § 4617(a)(5)(A).

Separately, HERA authorized the Department of Treasury (Treasury) to purchase shares of the enterprises if it determined that a capital infusion would benefit taxpayers and the markets. 12 U.S.C. §§ 1455(*l*)(1), 1719(g)(1).

**3.** In September 2008, the Director of FHFA exercised their authority under HERA to place the enterprises into conservatorships with the consent of the enterprises' boards. *Washington Fed.*, 26 F.4th at 1260. Treasury exercised its authority

---

[2] This language is understood to mean that, in its role as conservator, FHFA may act in the interests of the public. *See Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1286 (Fed. Cir. 2022) (citing *Collins*, 594 U.S. at 254).

3

to purchase enterprise shares the next day, and FHFA, on behalf of each enterprise, entered into purchasing agreements with Treasury whereby Treasury committed to provide up to $100 billion of taxpayer funds to each enterprise to ensure that their assets remain greater than their liabilities. *Collins*, 594 U.S. at 231–32. In exchange, Treasury received 1 million shares of senior preferred stock in each enterprise that entitled it to, among other things, a senior liquidation preference of $1 billion with a dollar-for-dollar increase whenever the enterprise drew Treasury funds and a requirement that the enterprises pay Treasury an annual dividend at a rate equal to 10% of Treasury's outstanding liquidation preference. *Id.* Shortly thereafter, the price of the enterprises' pre-existing preferred shares declined significantly. Appx3.

### B. *Washington Federal* Litigation

In June 2013, a group of enterprise shareholders filed a putative class action alleging that "in imposing the conservatorships over the Enterprises, the government destroyed the rights and value of the property interests tied to the common and preferred stock of the [enterprises] held by the Washington Federal Plaintiffs." *Washington Fed.*, 26 F.4th at 1261 (quotation marks omitted). The complaint raised a Fifth Amendment takings claim and/or an illegal exaction claim. *Id.* at 1260.

The CFC dismissed the *Washington Federal* claims, and this Court affirmed. This Court first dismissed the illegal exaction claim because "case law makes clear that the … Plaintiffs may not challenge the propriety of the FHFA's appointment as conservator through an illegal exaction claim in the Claims Court." *Washington Fed.*,

4

26 F.4th at 1263. In so holding, this Court emphasized that Congress provided an exclusive statutory mechanism for challenging FHFA's appointment as conservator in 12 U.S.C. § 4617(a)(5) and noted that neither the enterprises nor their shareholders had challenged FHFA's appointment through the process set forth in 12 U.S.C. § 4617(a)(5). *Id.* at 1264. The shareholders in *Washington Federal* were thus required to "litigate their claims on the assumption that the FHFA's appointment as conservator was lawful." *Id.* at 1263. And because the illegal exaction claim required showing that the imposition of the conservatorship was unlawful, it was not plausible as a matter of law. *Id.*

This Court then dismissed the takings claim for two independent reasons. First, the Court held that the plaintiffs had failed to state a claim. *Washington Fed.*, 26 F.4th at 1265. Because the plaintiffs could not challenge the lawfulness of the conservatorships' imposition, the court assumed that the imposition of the conservatorships was lawful and considered whether the plaintiffs had stated a takings claim based on a lawful decision to place the enterprises into conservatorships. *Id.* at 1266. The Court held that the imposition of the conservatorship did not constitute a cognizable taking because enterprise shareholders did not "retain[] any investment-backed expectation that the value of their shares would not be diluted and the rights otherwise attendant to share ownership would not be temporarily suspended" upon the imposition of a conservatorship. *Id.* The Court noted that FHFA's conservatorship authority under HERA was "unusual and extremely broad." *Id.* In

5

particular, the statute granted FHFA as conservator the authority to "act in ways that are *not* in the best interests of either the Enterprises or the shareholders, and, instead, are beneficial to the FHFA and the public it serves." *Id.* Furthermore, the Court explained, "shareholders lack a cognizable property interest in the context of a takings claim" where "shareholders hold shares in such highly regulated entities—entities that the government has the authority to place into conservatorship—where the conservator's powers are extremely broad, and where the entities were lawfully placed into such a conservatorship." *Id.*

The Court also held that the takings claims should be dismissed on "an independent ground": lack of standing. *Washington Fed.*, 26 F.4th at 1267. While the *Washington Federal* plaintiffs pleaded their claims as direct claims, the Court found that they were "substantively derivative." *Id.* The plaintiffs pleaded that the "harms to their shareholder rights flowed from the injury to the Enterprises by the unlawful appointment of the FHFA as conservator." *Id.* at 1268. Their harms, the Court explained, thus "depend on an alleged injury to the Enterprises" and were "not independent" of harm to the enterprises. *Id.* Consequently, the plaintiffs lacked standing. *Id.* at 1267–70.

## C. Prior Proceedings

Plaintiffs here—an individual and several entities he controls—initially filed suit in October 2021. Appx5. This case was stayed pending resolution of the *Washington Federal* appeal, and, after this Court's decision, plaintiffs here filed an amended

6

complaint. Appx5. Plaintiffs alleged that the imposition of the conservatorships was an illegal taking of plaintiffs' financial property. Appx5. They also alleged that the imposition of the conservatorships breached a contract between plaintiffs and the government. Appx5. The government moved to dismiss plaintiffs' complaint, and the CFC granted the motion.

The CFC first held that plaintiffs' claims were untimely, and it consequently lacked jurisdiction. Appx6-10. The parties did not dispute that plaintiffs' claims accrued in 2008 and that plaintiffs thus filed their suit well outside the Tucker Act's six-year statute of limitations, 28 U.S.C. § 2501. But plaintiffs argued that the limitations period was tolled during the pendency of *Washington Federal* under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny, which provide that the filing of a class action can toll statutes of limitations for potential class members. *Id.* at 554; *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983). The CFC rejected that argument, holding that because *American Pipe* tolling is equitable in nature, *see California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc. (CalPERS)*, 582 U.S. 497, 509–10 (2017), and equitable tolling cannot toll the Tucker Act's statute of limitations, *see John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–36 (2008), *American Pipe* tolling cannot apply to Section 2501. Appx6-10.

In so doing, the CFC concluded that *CalPERS* had implicitly overruled *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010), a decision of this Court that applied *American Pipe* tolling to Section 2501. Appx7-8. While *Bright* accepted that Section

2501 was not susceptible to equitable tolling, it understood *American Pipe* to be a statutory rule. Appx8 (citing *Bright*, 603 F.3d at 1279–80, 1287–88). The CFC explained that, because *Bright's* presumption that *American Pipe* tolling was statutory in nature was negated by *CalPERS's* holding that *American Pipe* tolling is equitable, *Bright* was no longer good law. Appx8-9.

The CFC further held that, even if the complaint were timely, plaintiffs' takings claims were properly dismissed for three independent reasons. First, the takings claims were barred under the doctrine of claim preclusion because they arose from the same transactional facts as those in *Washington Federal*—namely, the imposition of the conservatorships—and were effectively brought by the same party—the enterprises—because the claims in both cases were substantively derivative. Appx11-14. Second, even if the claims were not formally barred, binding precedent—namely, *Washington Federal*—established that plaintiffs' takings claims were not cognizable as a matter of law. Appx14-15. Third, like the plaintiffs in *Washington Federal*, plaintiffs lacked standing to bring substantively derivative claims on behalf of the enterprises. Appx15-16.

Finally, the CFC also dismissed plaintiffs' contract claims on the alternate ground that plaintiffs had failed to state a claim. The CFC held that plaintiffs had not established that a contract existed between them and the government based on various regulatory incentives that the government had provided to encourage plaintiffs to invest in enterprise stock because the government's actions as a regulator

did not amount to contractual promises. Appx16-17. Furthermore, as this Court previously held in *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1294–96 (Fed. Cir. 2022), the CFC concluded that the enterprises' bylaws and preferred share agreements with shareholders, even if they constituted a contract, did not constitute a contract with the government.

## SUMMARY OF ARGUMENT

**I. A.** The CFC correctly dismissed plaintiffs' claims as untimely. Plaintiffs concede that their claims are untimely unless the Tucker Act's six-year limitations period was tolled under *American Pipe* during the pendency of the *Washington Federal* litigation. It was not.

Supreme Court precedents squarely foreclose the application of *American Pipe* tolling to the Tucker Act's statute of limitations, 28 U.S.C. § 2501. The Supreme Court has long held that jurisdictional statutes of limitations cannot be tolled through the exercise of a court's equitable powers. *See Boechler, P.C. v. Commissioner*, 596 U.S. 199, 203 (2022). In *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), the Supreme Court held that Section 2501 is one such jurisdictional statute and therefore not subject to equitable tolling. And in *CalPERS*, 582 U.S. 497 (2017), the Supreme Court held that *American Pipe* tolling is a form of equitable tolling. Together, these precedents establish that *American Pipe* tolling cannot apply to Section 2501 and that, accordingly, plaintiffs' claims were untimely.

9

**B.** Plaintiffs' arguments to the contrary lack merit. Their request that this Court reconsider *John R. Sand*'s holding that Section 2501 is jurisdictional must be rejected because this Court is, of course, powerless to ignore binding Supreme Court precedent. In any event, plaintiffs are wrong to suggest that the Supreme Court would reach a different conclusion if it were to reconsider *John R. Sand*. While the Supreme Court's understanding of the line between jurisdictional and nonjurisdictional statutes of limitations has evolved in recent years, the Court in *John R. Sand* accounted for that evolved understanding when it held that Section 2501's limitations period is jurisdictional. Indeed, in the years since *John R. Sand* was decided, both this Court and the Supreme Court have repeatedly affirmed that Section 2501 is jurisdictional and therefore not subject to equitable tolling. *See, e.g.*, *United States v. Kwai Fun Wong*, 575 U.S. 402, 413 (2015) ("[T]his Court repeatedly held [Section 2501's] 6-year limit to be jurisdictional and thus not subject to equitable tolling."); *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (describing *John R. Sand* as "holding that the statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is jurisdictional and not susceptible to equitable tolling").

Plaintiffs' arguments that *Bright* remains good law and their attempts to distinguish *CalPERS* fail, too. *Bright*'s conclusion that *American Pipe* tolling can apply to Section 2501 hinged on the understanding that *American Pipe* tolling is statutory in nature. *CalPERS* negates that understanding; it makes clear that *American Pipe* tolling is equitable in nature.

10

Plaintiffs' attempts to distinguish *CalPERS* are also unconvincing. That case's holding that *American Pipe* is equitable in nature applies equally to Section 2501, a jurisdictional statute of limitations, as to the statute of repose at issue in *CalPERS*. Jurisdictional statutes of limitations are no more susceptible to equitable tolling than statutes of repose.

**II.** Although the Court need not reach the merits of plaintiffs' takings claims, it should affirm the CFC's dismissal for failure to state a claim if it does. First, binding precedent establishes that plaintiffs cannot assert a takings claim based on the imposition of the conservatorships on the enterprises. *See Washington Fed. v. United States*, 26 F.4th 1253, 1260 (Fed. Cir. 2022). That plaintiffs' claim focuses on the taking of their total bank assets, as opposed to the diminution in enterprise share value, does not distinguish their claims from *Washington Federal*. The loss of their total bank assets was, they allege, "inextricably linked" to and a "direct result" of the decline in share value that resulted from the imposition of the conservatorships. And, indeed, plaintiffs' tolling argument rests on their being a member of the *Washington Federal* class. *Washington Federal*'s conclusion that the imposition of the conservatorships did not constitute a taking of shareholder property thus forecloses plaintiffs' taking claims here. Second, plaintiffs lack standing to assert these claims because the claims—though pleaded as direct—depend on an alleged injury to the enterprises and are thus derivative in nature and belong to the enterprises themselves. Third, plaintiffs' takings claims are precluded by the *Washington Federal* decision. The

real parties in both cases are the same—the enterprises—and the claims arise from the same transactional facts, the imposition of the conservatorships.  Plaintiffs therefore cannot relitigate those same claims here.

**III.**  The Court likewise need not reach the merits of plaintiffs' contract claims and should likewise dismiss them if it does.  As an initial point, even if *American Pipe* tolling can apply to Section 2501—and it cannot—plaintiffs' contracts claims are still untimely.  *Washington Federal*, the class action suit plaintiffs contend should toll the statute of limitations for their claims here, did not involve contract claims.  Accordingly, that case did not put defendant on notice of such claims and allowing them to be raised here, years after the statute of limitations has expired, would prejudice defendant.

In any event, plaintiffs fail to establish an implied contract with the government based on government incentives to invest in the enterprises because those incentives were regulatory actions, not evidence of intent to contract.  They also fail to establish an implied contract with the government based on the enterprises' bylaws and preferred shares because, even assuming those constitute contracts, they are not contracts to which the government is a party.  As this Court has previously held, in succeeding to the enterprises' contracts, FHFA did not retain its governmental character, and so the government did not become a party to plaintiffs' purported contracts.

## ARGUMENT

### I.    Standard of Review

This Court reviews a dismissal for lack of subject-matter jurisdiction and for failure to state a claim de novo. *Walby v. United States*, 957 F.3d 1295, 1298 (Fed. Cir. 2020).

### II.    *American Pipe* Tolling Cannot Apply to Section 2501. [3]

The Tucker Act provides that the Court of Federal Claims may hear claims filed "within six years after such claim first accrues." 28 U.S.C. § 2501. Plaintiffs concede that their claims were filed more than six years after they accrued, Appx6, but nonetheless contend that their claims are timely because the *Washington Federal* litigation tolled the limitations period under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny. Those cases hold that the filing of a class action can in some cases toll a statute of limitations for members of a putative class while class certification is under consideration. *Id.* at 554; *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349–50 (1983) (extending *American Pipe*'s holding to putative class members who elect to file individual suits rather than intervene in class action). That argument fails here because, as the CFC correctly held, *American Pipe* tolling is a form

---

[3] Section II of this brief addresses an issue identical to that discussed in Section II of the government's brief in *Blue Cross & Blue Shield of Kansas City Welfare*, Nos. 24-2317, 25-1027 (Fed. Cir.), and substantially overlaps with that section.

of equitable tolling, and the Tucker Act's statute of limitations is not subject to equitable tolling. Appx10-11.

A. **Supreme Court Precedent Forecloses Application of *American Pipe* Tolling to Tucker Act Class Actions.**

**1.** Equitable tolling is a "traditional feature of American jurisprudence" that presumptively applies to most statutes of limitations, including in suits brought against the United States. *Boechler, P.C. v. Commissioner*, 596 U.S. 199, 208–09 (2022); *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). Its presumption of applicability is rebuttable, however, including by a showing that Congress intended a time bar to be "jurisdictional." *United States v. Kwai Fun Wong*, 575 U.S. 402, 408–09 (2015). When a statute of limitations is jurisdictional, it cannot be tolled by a court's equitable powers. *Id.*; *see also Boechler*, 596 U.S. at 209.

**2.** In *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), the Supreme Court held that Section 2501 is a jurisdictional statute of limitations. The question before the Court in *John R. Sand* was "whether a court must raise on its own the timeliness of a lawsuit filed in the Court of Federal Claims, despite the Government's waiver of the issue." *Id.* at 132. A court's obligation to consider timeliness *sua sponte* is a consequence of a statute being deemed jurisdictional. *Id.* at 133–34. Accordingly, the Supreme Court answered the question before it by assessing whether Section 2501 is jurisdictional in nature. *Id.*

The Court then held that Section 2501 is jurisdictional. *John R. Sand*, 552 U.S. at 139. In reaching that conclusion, the Court explained that some statutes of limitations further a purpose different from the rest, and, consequently, are treated differently by courts. *Id.* at 133. Statutes of limitations in this category serve not "to protect defendants against stale or unduly delayed claims," as typical statutes of limitations do, but rather strive "to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency." *Id.* (citations omitted). The time limits established by these "more absolute" statutes, the Court explained, have been referred to as "jurisdictional" and carry with them certain consequences, including "requiring a court to decide a timeliness question despite a waiver" and—relevant here—"forbidding a court to consider whether certain equitable considerations warrant extending a limitations period." *Id.* at 133–34. Section 2501, the Court unequivocally stated, "has long [been] interpreted … as setting forth this second, more absolute, kind of limitations period." *Id.* at 134. In other words, "the statute's limitations period [i]s 'jurisdiction[al]' and not susceptible to equitable tolling." *Id.* at 136 (second alteration in original) (quoting *Soriano v. United States*, 352 U.S. 270, 273–74 (1957)).

In the years since *John R. Sand*, both this Court and the Supreme Court have repeatedly recognized and reaffirmed that Section 2501 is jurisdictional and thus not subject to equitable tolling. *See, e.g., Wong*, 575 U.S. at 413 ("[T]his Court repeatedly

15

held [Section 2501's] 6-year limit to be jurisdictional and thus not subject to equitable tolling."); *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) (describing *John R. Sand* as "holding that the statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is jurisdictional and not susceptible to equitable tolling"); *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1380–81 (Fed. Cir. 2012) ("[Section 2501] is jurisdictional and may not be waived or tolled." (citing *John R. Sand*, 552 U.S. at 136–39)).

**3.** Given *John R. Sand*'s holding that Section 2501 is jurisdictional and not subject to equitable tolling, *American Pipe* cannot toll Section 2501's limitations period. The Supreme Court squarely held in *CalPERS*, 582 U.S. 497 (2017), that *American Pipe* is a form of equitable tolling, thus foreclosing the possibility that it can be relied on to extend Section 2501's jurisdictional deadline. *Id.* at 509–10.

In *CalPERS*, the Supreme Court concluded that *American Pipe* could not delay the Securities Act of 1933's filing deadline, a statute of repose that, like jurisdictional statutes of limitations, is not subject to equitable tolling. 582 U.S. at 504–06. The nature of *American Pipe* tolling—that is, whether it is grounded in a legislative enactment or derived from equity principles—was therefore dispositive to resolution of the question before the Court. *CalPERS* determined that "the source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, rather than to interpret and enforce statutory provisions." *Id.* at 509. The tolling rule *American Pipe* created could not have been "mandated by the text of a statute or federal rule," the

16

Court explained, since the "central text at issue in *American Pipe* was [Federal Rule of Civil Procedure] 23, and Rule 23 does not so much as mention the extension or suspension of statutory time bars." *Id.* Instead, *American Pipe*'s holding was "grounded in the traditional equitable powers of the judiciary," as reflected in the language and reasoning of that decision and in numerous other decisions referring to *American Pipe* as "equitable tolling." *Id.*

**4.** These precedents lead inexorably to the conclusion that *American Pipe* cannot toll the Tucker Act's statute of limitations. Because (1) jurisdictional statutes of limitations are not subject to equitable tolling, (2) the Tucker Act's statute of limitations is jurisdictional, and (3) *American Pipe* tolling is equitable in nature, *American Pipe* tolling cannot save plaintiffs' claims here. *See also* Appx10.

**B.    Plaintiffs' Contrary Arguments Have No Merit.**

For the reasons explained above, *John R. Sand* and *CalPERS* squarely foreclose plaintiffs' assertion that *American Pipe* tolling applies to their claims. Plaintiffs ask this Court to disregard those binding precedents and instead follow this Court's decision in *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010). There, this Court held that *American Pipe* tolling can apply to the Tucker Act's statute of limitations. *Id.* at 1286–87. But *Bright*'s conclusion rested on the understanding that *American Pipe* tolling is statutory, rather than equitable, in nature, *see id.* at 1287–88—an understanding that has since been deemed incorrect by the Supreme Court, *CalPERS*, 582 U.S. at 509–10.

In nonetheless asking this Court to apply *Bright*, plaintiffs raise two arguments. First, they argue that *John R. Sand*'s conclusion that Section 2501 is jurisdictional is incorrect in light of the Supreme Court's more recent approach to determining whether a statute of limitations qualifies as jurisdictional. Second, they assert that *CalPERS* did not overrule *Bright* because *Bright* and *John R. Sand* distinguished between *American Pipe* tolling and other forms of equitable tolling, and because *CalPERS* addressed a statute of repose, rather than a statute of limitations like Section 2501. Neither of plaintiffs' attempts to undermine the binding Supreme Court precedents that govern this case has merit.

### 1. Recent Supreme Court Precedent Has No Bearing on *John R. Sand*'s Binding Conclusion.

Plaintiffs first ask the Court to revisit *John R. Sand*'s holding that Section 2501 is jurisdictional because, in their view, that case did not apply the proper test for determining whether a statute is jurisdictional. Br. 16–32. They contend that when this Court applies the proper "clear statement" test, the Court will conclude that Section 2501 is not, in fact, jurisdictional. That argument fails because *John R. Sand* is binding Supreme Court precedent this Court is obligated to follow, and because, in any event, plaintiffs provide no basis for concluding that the Supreme Court would reach a different outcome were it to decide *John R. Sand* under their proposed test.

**a.** When "'a precedent of th[e Supreme] Court has direct application in a case,'" as *John R. Sand* does here, "a lower court 'should follow the case which directly

controls, leaving to th[e Supreme] Court the prerogative of overruling its own decisions.'" *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). "This is true even if th[is Court] thinks the precedent is in tension with 'some other line of decisions,'" as plaintiffs contend *John R. Sand* is. *Id.* This Court, accordingly, lacks the authority to disregard *John R. Sand*'s holding that Section 2501 is jurisdictional.

**b.** Moreover, *John R. Sand* is not in tension with the cases plaintiffs cite. As plaintiffs acknowledge, the case that created the "clear-statement" test they press was decided before *John R. Sand*. Br. 17 (describing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), as the case in which "the Supreme Court began development of its 'clear-statement' test"). Indeed, *John R. Sand* cited to that very case in describing the category of "more absolute"—also known as "jurisdictional"—statutes of limitations. 552 U.S. at 134 (quotation marks omitted) (citing *Arbaugh*, 546 U.S. at 514). *John R. Sand* thus accounted for *Arbaugh*'s "clear statement" test when it determined that Section 2501 is jurisdictional.

*Harrow v. Department of Defense*, 601 U.S. 480 (2024), did not work a significant change in the Supreme Court's understanding of how to distinguish jurisdictional from nonjurisdictional statutes of limitations. *Harrow*, too, articulates *Arbaugh*'s test for drawing this line. *Id.* at 484 ("[T]his Court will 'treat a procedural requirement as jurisdictional only if Congress "clearly states" that it is.'" (first quoting *Boechler*, 596 U.S. at 203; and then quoting *Arbaugh*, 546 U.S. at 515)). Like the cases before it,

*Harrow* reiterated that statutes of limitations are jurisdictional when "traditional tools of statutory construction" show that Congress intended them to be. *Id.* (quoting *Wong*, 575 U.S. at 410). And like the cases before it, *Harrow* roots its test in the *Arbaugh* decision, which was decided before and cited in *John R. Sand*. *See, e.g.*, *Fort Bend County v. Davis*, 587 U.S. 541, 550–51 (2019) (citing *Arbaugh* for establishing that statutes are jurisdictional when "the Legislature clearly states" so (quotation marks omitted)); *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (citing *Boechler*'s citation of *Arbaugh* for same). In short, *John R. Sand* held that Section 2501 was jurisdictional against the backdrop of the same "clear-statement" test plaintiffs press.

     **c.** Furthermore, plaintiffs provide no reason to think that the Supreme Court would reach a different conclusion should it have the opportunity to revisit *John R. Sand*. The Supreme Court "has made clear that it will not undo a 'definitive earlier interpretation' of a statutory provision as jurisdictional without due regard for principles of *stare decisis*." *Wilkins*, 598 U.S. at 159. Earlier interpretations are "'definitive'" when they "addressed whether a provision is "'technically jurisdictional'" … and whether anything in the decision 'turned on that characterization.'" *Id.* at 159–60 (alteration omitted) (first quoting *John R. Sand*, 552 U.S. at 138; and then quoting *Arbaugh*, 546 U.S. at 512). *John R. Sand*'s holding plainly meets these requirements, as the Supreme Court itself acknowledged. *See* 552 U.S. at 137–38 (emphasizing that the Court had "previously provided a definitive interpretation" of Section 2501 as jurisdictional statute of limitations not subject to equitable tolling).

20

Furthermore, *John R. Sand*'s conclusion that Section 2501 is jurisdictional holds under the test plaintiffs articulate. As plaintiffs recognize, procedural statutes are jurisdictional when Congress "clearly states" they are. Br. 20 (quotation marks omitted); *see also Arbaugh*, 546 U.S. at 515. To determine whether Congress has so clearly stated, courts employ "traditional tools of statutory construction," including text, context, and legislative history. *Wong*, 575 U.S. at 410–12. Context includes the Supreme Court's "interpretations of similar provisions in many years past," *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153–54 (2013) (quotation marks omitted), and "when a long line of th[e Supreme] Court's decisions left undisturbed by Congress has treated a similar requirement as jurisdictional, [the Court] will presume that Congress intended to follow that course," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) (citation and quotation marks omitted). That is precisely the case with Section 2501: The Supreme Court has "long interpreted" it as jurisdictional, *John R. Sand*, 552 U.S. at 134, and Congress has left that interpretation undisturbed. Thus, contrary to plaintiffs' contention, *John R. Sand*'s conclusion is in line with Supreme Court precedent.

## 2. *CalPERS* Overruled *Bright* and Governs Here.

Plaintiffs next argue that *CalPERS* did not abrogate *Bright* and so *Bright*'s conclusion should control here. Br. 31–34. As the CFC explained, that position cannot stand in light of the fact that *CalPERS*'s conclusion that *American Pipe* tolling is

equitable directly undermined the presumption on which *Bright's* holding hinges. Appx7-8.

    **a.** In *Bright*, this Court held that *American Pipe* tolling could apply to Section 2501 because *American Pipe* tolling was not equitable in nature. *Bright*, 603 F.3d at 1287–88. The *Bright* Court acknowledged that *John R. Sand* held that "equitable tolling is barred under section 2501." *Id.* at 1287. But, the Court reasoned, that holding did "not mean that class action *statutory* tolling also is barred," *id.* (emphasis added), and therefore *American Pipe* could apply, *id.* at 1290. Thus, "[e]ssential to *Bright's* analysis is the presumption that *American Pipe* tolling is a statutory rule." Appx8 (citing *Bright*, 603 F.3d at 1279–80, 1287–88).

    *CalPERS* declared that presumption incorrect. There, the Supreme Court squarely held that "the source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, rather than to interpret and enforce statutory provisions." *CalPERS*, 582 U.S. at 509. Indeed, the *CalPERS* Court observed that a statute could not have been the basis for *American Pipe* tolling, since Rule 23 makes no mention of statutory time bar extensions. *Id.*

    *CalPERS* thus undermined the presumption on which the *Bright* Court's conclusion "hinges." Appx8. Given *Bright's* acknowledgement that equitable tolling of Section 2501 is barred under *John R. Sand* and *CalPERS's* holding that *American Pipe* is equitable, "*Bright*, were it decided today, would have to come out the opposite way." Appx10. And because *Bright's* reasoning is plainly "inconsistent with intervening

22

Supreme Court authority," this panel can recognize that it has been implicitly overruled. *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014).

**b.** Plaintiffs counter that *CalPERS* does not overrule *Bright* and foreclose application of *American Pipe* tolling because (1) *Bright* distinguished between forms of equitable tolling and allowed *American Pipe* to apply because it is a type of equitable tolling that can, consistent with *John R. Sand*, toll Section 2501, and (2) *CalPERS* is distinguishable because it involved a statute of repose, rather than a statute of limitations. Br. 32–34. Neither argument holds any water.

**i.** As an initial matter, plaintiffs are wrong to suggest (Br. 32) that *John R. Sand* did not hold that Section 2501 is not susceptible to equitable tolling. While that case described statutes like Section 2501 as "more absolute" and as forbidding "*certain* equitable considerations," *John R. Sand*, 552 U.S. at 133–34 (emphasis added), plaintiffs give that word choice more weight than it can bear. *John R. Sand* also described Section 2501 as "jurisdictional" and stated that Section 2501 is "not susceptible to equitable tolling" without qualification. *Id.* at 134, 136 (quotation marks omitted). And both the Supreme Court and this Court have described *John R. Sand* as establishing that Section 2501 is not susceptible to equitable tolling without qualification in numerous decisions. *See, e.g.*, *Wong*, 575 U.S. at 413 ("[T]his Court repeatedly held [Section 2501's] 6-year limit to be jurisdictional and thus not subject to equitable tolling."); *Young*, 529 F.3d at 1384 (describing *John R. Sand* as "holding that the statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is

jurisdictional and not susceptible to equitable tolling"); *FloorPro*, 680 F.3d at 1380–81 ("[Section 2501] is jurisdictional and may not be waived or tolled." (citing *John R. Sand*, 552 U.S. at 136–39)).

Plaintiffs are also wrong to state that *Bright* allowed *American Pipe* tolling to apply because it rests on different equitable principles than what they deem traditional equitable tolling. Br. 32–33. *Bright* clearly reasoned that *American Pipe* tolling is "statutory" and therefore "the fact that equitable tolling is barred under section 2501 does not mean that class action statutory tolling also is barred." 603 F.3d at 1287–88.

Plaintiffs' contention is unavailing, in any event. The Supreme Court has made clear that jurisdictional statutes of limitations are not subject to equitable tolling. *Boechler*, 596 U.S. at 203. That is, in fact, one of the defining features of such statutes. It is therefore unsurprising that plaintiffs fail to cite any authority to support their request that this Court distinguish between types of equitable tolling, some of which may apply to jurisdictional statutes.

Furthermore, *American Pipe* tolling shares common motivations with "traditional" equitable tolling. Like all forms of equitable tolling, the *American Pipe* tolling rule is "based on traditional equitable powers, designed to modify a statutory time bar where its rigid application would create injustice." *CalPERS*, 582 U.S. at 510. As other circuits have recognized, *American Pipe* "is, at its core, an equitable doctrine … [that] was created to protect class members from being forced to file individual suits in order to preserve their claims." *Aly v. Valeant Pharm. Int'l Inc.*, 1 F.4th 168, 177

(3d Cir. 2021) (emphasis, footnote, and quotation marks omitted). In other words, the doctrine was ultimately created to promote justice and fairness for individual class members. *See In re WorldCom Sec. Litig.*, 496 F.3d 245, 256 (2d Cir. 2007). Thus, there are traditional equitable concerns at the core of *American Pipe*. *See CalPERS*, 582 U.S. at 509 (describing *American Pipe*'s holding as "grounded in the *traditional* equitable powers" (emphasis added)).

**ii.** Plaintiffs' attempt to distinguish *CalPERS* on the basis that it involved a statute of repose rather than a statute of limitations, Br. 33–34, misses the point. *CalPERS*'s holding that *American Pipe* tolling is equitable in nature applies equally to a jurisdictional statute of limitations because jurisdictional statutes of limitations, like statutes of repose, are not subject to equitable tolling. *See Boechler*, 596 U.S. at 203 ("Jurisdictional requirements … do not allow for equitable exceptions."). In arguing that *CalPERS*'s holding does not extend here because statutes of limitations differ from statutes of repose, plaintiffs fail to recognize the distinction between jurisdictional and nonjurisdictional statutes of limitations, and Section 2501's place in the first category. Because *John R. Sand* has already established that Section 2501— like statutes of repose—is not subject to equitable tolling, *CalPERS*'s holding that

*American Pipe* rests on the judiciary's equitable power forecloses application of that doctrine to Section 2501.[4]

## III. The Court of Federal Claims Correctly Dismissed Plaintiffs' Takings Claims on the Merits.

For the reasons just discussed, plaintiffs' claims are untimely, and the Court need not reach the CFC's alternative grounds for dismissal of plaintiffs' takings claims. But should the Court reach those grounds, it should affirm the CFC's dismissal. Binding precedent establishes that plaintiffs have not stated a takings claim, and their claims—which are substantively identical to those in *Washington Federal*—are precluded, in any event.

### A. Plaintiffs Have Not Stated a Takings Claim.

To state a takings claim, plaintiffs must show that (1) they have "established a property interest for purposes of the Fifth Amendment" and (2) "the governmental action at issue amount[s] to a compensable taking of that property interest." *American Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004). *Washington Federal* precludes plaintiffs from establishing either.

**1.** *Washington Federal v. United States* squarely held that the imposition of the conservatorships did not constitute a taking of the property of enterprise shareholders. 26 F.4th 1253, 1265–66 (Fed. Cir. 2022). The court held that

---

[4] Because the CFC correctly held that *American Pipe* tolling cannot apply to Section 2501, it did not reach the government's alternative argument that such tolling was inapplicable under the facts of this case. *See* Appx11 n.4.

shareholders lacked a cognizable property interest for takings purposes where they had invested in "highly regulated entities—entities that the government has the authority to place into conservatorship—where the conservator's powers are extremely broad, and where the entities were lawfully placed into such a conservatorship." *Id.* at 1266. The court additionally concluded that enterprise shareholders had no "investment-backed expectation that the value of their shares would not be diluted and the rights otherwise attendant to share ownership would not be temporarily suspended" following the imposition of the conservatorships. *Id.* These conclusions were consistent with this Court's precedent, which makes "clear that regulated financial entities lack the fundamental right to exclude the government from their property when the government could place the entities into conservatorship or receivership." *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1303 (Fed. Cir. 2022) (citing *California Hous. Sec., Inc. v. United States*, 959 F.2d 955, 958 (Fed. Cir. 1992); and then citing *Golden Pac. Bancorp. v. United States*, 15 F.3d 1066, 1074 (Fed. Cir. 1994)). Without the right to exclude, shareholders like plaintiffs "could [not] have developed a historically rooted expectation of compensation" when the government imposes a conservatorship or receivership in accordance with its statutory authority to regulate the banking system. *Golden Pac. Bancorp*, 15 F.3d at 1074 (quoting *California Hous. Sec.*, 959 F.2d at 958).

*Washington Federal*'s conclusion that the imposition of the conservatorships did not constitute a taking of shareholders' property squarely forecloses plaintiffs' takings

claims here. "As … shareholder[s] of the same highly regulated enterprises" as the shareholders in *Washington Federal*, plaintiffs lack the "investment-backed expectations or property rights in the value" of their shares in the enterprises. Appx14.

**2.** Plaintiffs object that their claims are not controlled by *Washington Federal* because they plead a different property interest than those plaintiffs: the loss of their total bank assets as opposed to a diminution in their share value. Br. 37, 44–46. That distinction is of no consequence because, as plaintiffs concede, the loss of their total bank assets was a direct consequence of the decline in value of their enterprise shares.

Plaintiffs "invested a substantial portion of their Tier 1 Capital"—*i.e.*, the minimum funds necessary for the bank to function—in enterprise shares. Appx100. When the conservatorship was imposed, their shares were "rendered … effectively worthless," Appx114, and most of plaintiffs' subsidiaries "were consequently unable to meet their capital requirements," Appx118. This "failure to meet capital requirements *resulted directly* from the [enterprises] conservatorship." Appx118 (emphasis added). "As a *direct result* of the Government's action in imposing the conservatorship[s]" plaintiffs' subsidiaries were "no longer able to meet their Tier 1 Capital regulatory requirements [and] were placed in receivership by the [Federal Deposit Insurance Corporation (FDIC)]." Appx122 (emphasis added). Thus, as plaintiffs themselves explain, "the taking of the Banks' Tier 1 Capital and other Total Bank Assets were inextricably linked. The destruction of the value of the Tier 1 Capital required, *ipso facto*, the taking of the Total Bank Assets." Br. 38. Plaintiffs'

28

own arguments thus establish that the property interest they allege—the loss of total bank assets—is "inextricably linked" and a "direct consequence" of the diminution in share value caused by the imposition of the conservatorships. Their alleged property interest and the alleged basis for their takings claim are therefore the same as that in *Washington Federal*—they allege that the imposition of the conservatorship resulted in a decline in the value of their shares. Indeed, as the CFC emphasized, Appx14, plaintiffs' tolling argument turns on their having been a member of the *Washington Federal* class.

Even if plaintiffs' interest were distinct from the decline in value of the enterprises' shares, this Court's caselaw forecloses a takings claim based on the placement of insolvent banks into a receivership. *See Golden Pac. Bancorp*, 15 F.3d at 1074 (rejecting takings claim based on bank's placement into receivership after being declared insolvent because bank had no expectation of compensation for seizure when government acting within legal authority); *California Hous. Sec.*, 959 F.2d at 959 (holding that appointment of conservator and receiver on failed bank did not give rise to takings claim giving "long history of government regulation"); *Branch v. United States*, 69 F.3d 1571, 1575 (Fed. Cir. 1995) ("It is well established that it is not a taking for the government to close an insolvent bank and appoint a receiver to take control of the bank's assets.").

Plaintiffs assert that their involvement in the "highly regulated" banking industry is not alone sufficient to defeat their takings claims. Br. 52–54. That

assertion is unavailing. While some government actions directed at highly regulated entities might involve a taking of property, *see* Br. 53, this Court has squarely held that FHFA's lawful decision to place the enterprises in conservatorships and a financial regulator's decision to place an undercapitalized bank in receivership do not constitute takings under the Fifth Amendment. *See supra* pp. 26–28. Plaintiffs were aware of the consequences of inadequate Tier 1 Capital, Appx94, and they nonetheless chose to engage in the banking industry and to purchase enterprise stocks to comprise most of their Tier 1 Capital. Thus, they were properly "deemed to understand that if [their] bank[s] bec[ame] insolvent or [were] operated in violation of laws or regulations"— by, for example, maintaining inadequate Tier 1 Capital—"the federal government may 'take possession of [the banks'] premises and holdings' and no compensation for that governmental action will be due." *Branch*, 69 F.3d at 1575 (citation omitted) (quoting *California Hous. Sec.*, 959 F.2d at 958).

## B. Plaintiffs Lack Standing to Raise These Claims.

*Washington Federal* also establishes that plaintiffs' takings claims should be dismissed for an additional reason: their claims—though some are pleaded as direct— are substantively derivative in nature, and plaintiffs lack standing to raise derivative claims.

*Washington Federal* explained that "[s]hareholders whose injuries are derivative of their ownership interests in a corporation may not bring a direct shareholder action to redress their injuries." 26 F.4th at 1267 (citing *Franchise Tax Bd. v. Alcan Aluminium*

*Ltd.*, 493 U.S. 331, 336 (1990)).  This Court concluded in that case that the plaintiffs' alleged injuries to the value of their shares and their shareholder rights "depend on an alleged injury to the Enterprises"—namely the diminution in the enterprises' value caused by the imposition of the conservatorship—and so, regardless of how they were pleaded, their claims were "substantively derivative."  *Id.* at 1267–68.

The same is true of plaintiffs' claims here, which are in all relevant respects identical to the *Washington Federal* takings claims.  *Compare Washington Fed.*, 26 F.4th at 1268 ("[A]s a result of the Government's legally unsubstantiated imposition of the conservatorships, the Government destroyed the value of the stock held by Plaintiffs"; "imposing the conservatorships upon the Companies, under false pretenses and without a statutory basis, causing the value of the Companies' shares to plummet, and destroying all shareholder rights and property interests" (alteration in original) (quotation marks omitted)), *with* Appx130 ("As a direct result of HERA, the conservatorship, and the [agreement with Treasury], the United States destroyed the reasonable investment-backed expectations of [plaintiffs] and, effectively 'took' the Tier 1 Capital represented by the investments in the [enterprises]."), and Appx134 ("When the conservatorship was imposed, a succession clause was triggered that took for a public purpose all voting rights, liquidation preferences, and dividend rights that [plaintiffs] obtained by virtue of their ownership of the preferred shares … .").  While plaintiffs here focus on a later consequence of the harm to the enterprises—the placement of their own assets into receivership—their allegations, like those in

*Washington Federal*, focus on the diminution in value of the enterprises' stock. That is

an indirect harm to the shareholder, and a classic example of derivative injury. *See*

*Southern Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1333 (Fed. Cir.

2005) ("[A] diminution in the value of corporate stock resulting from some depletion

of or injury to corporate assets is a direct injury only to the corporation; it is merely an

indirect or incidental injury to an individual shareholder[.]" (quoting *Gaff v. FDIC*, 814

F.2d 311, 315 (6th Cir. 1987))). Thus, because plaintiffs' alleged injuries "depend on

an alleged injury to the Enterprises," they "lack standing to assert their substantively

derivative claim as a direct takings claim." *Washington Fed.*, 26 F.4th at 1268.

### C. These Claims Are Precluded, In Any Event.

Alternatively, *Washington Federal* requires dismissal of plaintiffs' takings claims

because their claims are substantively identical to the shareholder derivative claims

rejected in that case and thus cannot be relitigated under the doctrine of claim

preclusion.

Under that doctrine, a party has "one, and only one, full and fair opportunity to

litigate its matter." *Bowers Inv. Co. v. United States*, 695 F.3d 1380, 1384 (Fed. Cir. 2012)

(citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Claim preclusion applies when

there is "(1) an identity of parties or their privies, (2) a final judgment on the merits of

the first suit, and (3) the later claim [is] … based on the same set of transactional facts

as the first claim such that the later claim should have been litigated in the prior case."

*Id.* (citing *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)).  Those elements are present here.

**1.**  As described above, both plaintiffs' claims and those in *Washington Federal* are substantively derivative claims that belong to the enterprises.  Thus, the real party in interest in both cases is the same: the enterprises.  The first preclusion element is, consequently, satisfied.  *See In re Sonus Networks, Inc.*, 499 F.3d 47, 63 (1st Cir. 2007) (rejecting assertion that plaintiffs lacked privity with plaintiffs in a prior derivative action because "[i]t is a matter of black-letter law that the plaintiff in a derivative suit represents the corporation, which is the real party in interest").

Plaintiffs protest that their claims are not precluded because they were absent class members and there was no certification of the *Washington Federal* class.  Br. 41– 45.  Their arguments are beside the point.  Because the named plaintiffs in *Washington Federal* pressed claims belonging to the enterprises, and plaintiffs here do the same, the parties are in privity.  The class-action nature of the *Washington Federal* suit is not relevant.

**2.**  *Washington Federal*'s dismissal of the shareholders' takings claims for failure to state a claim "is a decision on the merits" sufficient to satisfy preclusion's second requirement.  *See Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed. Cir. 1995).  Plaintiffs do not dispute this.

**3.**  Finally, plaintiffs' claims and the *Washington Federal* claims arise from the same transactional facts.  Whether two claims involve the same transactional facts is

determined "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1271 (Fed. Cir. 2008) (quoting Restatement (Second) of Judgments § 24(2) (Am. Law Inst. 1982), Westlaw (database updated Oct. 2024)). Both plaintiffs' and the *Washington Federal* claims arise from the placement of the enterprises into conservatorships. *See* Appx85; *Washington Fed.*, 26 F.4th at 1260–61, 1265. Both allege that the placement of the enterprises into conservatorships deprived them of their shareholder rights and led to a diminution in value of their shares in the enterprises. *See* Appx85; *Washington Fed.*, 26 F.4th at 1260–61, 1265. And both allege that the imposition of the conservatorships constituted a taking. *See* Appx85; *Washington Fed.*, 26 F.4th at 1260–61, 1265. While plaintiffs here attempt to focus on a later-in-the-chain injury resulting from the diminution in share value, both alleged takings are ultimately "traceable to the FHFA's imposing the conservatorships under the authority of the Recovery Act in 2008." Appx12. They therefore arise from the same transaction. Appx12; *see also Resource Invs., Inc. v. United States*, 785 F.3d 660, 667 (Fed. Cir. 2015) ("[T]he bar to subsequent litigation applies even though the plaintiff is prepared in the second action to present evidence or grounds or theories of the case not presented in the first action." (alterations and quotation marks omitted)).

**IV.    The Court of Federal Claims Correctly Dismissed Plaintiffs'
        Breach of Implied Contract Claims.**

The Court also need not reach the merits of plaintiffs' claims for breach of implied covenant and breach of implied regulatory contract because they, too, are untimely.  That is true even if *American Pipe* tolling could apply to Section 2501. Because contract claims were not raised in *Washington Federal*, applying *American Pipe* tolling to the limitations period for plaintiffs' contract claims here would prejudice defendant and be inconsistent with *American Pipe* itself.  In any event, this Court should affirm the CFC's dismissal of the contracts claims on the alternate ground that plaintiffs failed to state a claim.

**A.    *American Pipe* Tolling Cannot Toll Plaintiffs' Contract
       Claims Even If Such Tolling Could Apply to Section 2501.**

Plaintiffs' contracts claims are untimely even if *American Pipe* tolling could toll the Tucker Act's statute of limitations.  The plaintiffs in *Washington Federal* did not assert contract claims at all, let alone the specific contract claims plaintiffs assert here. Consequently, *American Pipe* tolling cannot toll the limitations period for plaintiffs' contract claims.

"[T]he tolling effect given to the timely prior filings in *American Pipe* … depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 467 (1975).  That is because, without identity of claims, defendants would not be on notice of all claims against them—"the evil against which [the *American Pipe* Court

understood] the statute of limitations was designed to protect." *Id.* at 467 & n.14. Thus, "[c]laims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe.*" *Crown, Cork & Seal Co.*, 462 U.S. at 355 (Powell, J., concurring); *see also Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015) (holding "*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action"); *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008) (declining to toll statute of limitations for compensation-discrimination claim where earlier class action complaint raised only promotion discrimination, hostile work environment, and retaliation claims).

The *Washington Federal* complaint did not put defendant on notice of the breach of implied contract claims plaintiffs raise here. That complaint alleged only takings and illegal exaction claims. *See Washington Fed.*, 26 F.4th at 1260–61; *see also* First Amended Complaint, at 79–82 ¶¶ 217–225, *Washington Fed. v. United States*, No. 13-cv-385 (Fed. Cl. Nov. 14, 2018), Dkt. No. 70. While that takings claim (like plaintiffs' here) arises from the same conduct plaintiffs allege constitutes a breach—namely, the imposition of the conservatorships—the claims do not "share a common factual and legal nexus" with the contract claims here. *See In re Community Bank of N. Va.*, 622 F.3d 275, 300 (3d Cir. 2010) (recognizing that even courts that have not required complete identity of claims apply *American Pipe* tolling when defendant has "adequate notice of the substantive nature of the claims" and "likely would rely on the same evidence and witnesses in mounting a defense").

Stating a claim for breach of implied contract requires plaintiffs to, among other things, establish that a contract existed. *See Fairholme*, 26 F.4th at 1293–94. Whether they have met that burden turns on facts and evidence related to the formation of the alleged contract, such as documents plaintiffs contend constitute contracts and the actions and authority of the individuals alleged to have bound the government to these contracts. That is not the "same evidence, memories, and witnesses" with which the takings claims are concerned. *Crown, Cork & Seal, Co.*, 462 U.S. at 355 (Powell, J., concurring) (quotation marks omitted). The *Washington Federal* takings claim thus did not place defendant on notice that it faced potential liability on the contract claims plaintiffs raise here, and defendant would be prejudiced by being faced with plaintiffs' contract claims now. *See id.* Applying *American Pipe* tolling to the limitations period for plaintiffs' contracts claims would therefore be inconsistent with *American Pipe*'s concern for preserving "essential fairness to defendants." 414 U.S. at 554–55; *see also Zarecor*, 801 F.3d at 888.

## B. Plaintiffs Fail to State a Claim for Breach of Implied Contracts.

To state a claim for breach, plaintiffs must first establish that a contract exists between plaintiffs and the government. They allege contracts in two forms: (1) regulatory contracts based on the government's incentives to invest in the enterprises and a purported promise that those investments were secure and guaranteed by the

government, Appx147-48; and (2) implied contracts rooted in the enterprises' bylaws and plaintiffs' preferred shares, Appx141-46.  Neither succeeds.

**1.**  To establish an implied contract with the government, plaintiffs must show "(1) mutuality of intent to contract; (2) consideration; … (3) unambiguous offer and acceptance[; and that] … (4) the government representative whose conduct is relied upon … ha[d] actual authority to bind the government in contract." *Fairholme*, 26 F.4th at 1293–94 (citation omitted) (citing *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990)).  Plaintiffs face a high bar in attempting to show an implied contract with the government because the government's primary function is to make laws and perform regulatory and sovereign functions, not to enter into contracts.  *See Brooks v. Dunlop Mfg. Inc.*, 702 F.3d 624, 630 (Fed. Cir. 2012); *Mola Dev. Corp. v. United States*, 516 F.3d 1370, 1378 (Fed. Cir. 2008).  They do not meet that high bar here.

Plaintiffs argue that the government's "regulatory incentives" meant "to induce banks to invest heavily in the [Government Sponsored Enterprises (GSEs)]" are evidence of the government's intent to enter into a contract with plaintiffs.  Appx92, Appx147.  These incentives included "permission to invest 100% of Tier 1 Capital in the GSEs," "tax advantages under the [Internal Revenue Service]'s rules," and "a 20% capital risk rating for the GSEs."  Appx147.  Contrary to plaintiffs' contention, those incentives do not reflect "a clear indication of intent to contract," as required to establish a contract with the government, but rather represent the "performance of [the government's] regulatory … functions."  *Mola*, 516 F.3d at 1378 (quotation marks

omitted). Such "performance of [an agency's] regulatory or sovereign functions does not create contractual obligations." *Id.* (quoting *D & N Bank v. United States*, 331 F.3d 1374, 1378–79 (Fed. Cir. 2003)). Plaintiffs' allegations are therefore insufficient to establish an implied-in-fact contract.

That these incentives were numerous and made investment in the enterprises an attractive proposition does not change the fact that governmental agencies who promulgated these incentives did so in their capacity as regulators. To the extent plaintiffs contend that the actions evidencing intent to contract were those of individual government employees who encouraged plaintiffs' investment in the enterprises, *see, e.g.*, Appx96-97, plaintiffs have not shown either that those actions constituted an offer, or that those individuals had the authority to bind the government in contract. *See Fairholme*, 26 F.4th at 1293–94.

Furthermore, the enterprises have long been and remain for-profit private companies. *See Collins v. Yellen*, 594 U.S. 220, 228 (2021). Like any private company, "neither the enterprises … nor any securities or obligations issued by the enterprises . . . are backed by the full faith and credit of the United States." 12 U.S.C. § 4501(4); *see also id.* § 4503 ("This chapter may not be construed as implying that any such enterprise … or any obligations or securities of such an enterprise … are backed by the full faith and credit of the United States."). Plaintiffs thus had no basis for believing that their investments in the private enterprises were backed by the government. Consequently, the CFC correctly concluded that "[n]othing shows a

government intent to contract, an offer and acceptance, or any commitment to compensating shareholders if investment values decline." Appx17.

**2.** Plaintiffs' attempt to locate their alleged contracts with the government in the enterprises' bylaws and plaintiffs' preferred shares also fails. Even assuming these constitute contracts, they do not constitute contracts *with the government*, as is required for Tucker Act jurisdiction. *See Fairholme*, 26 F.4th at 1294.

Plaintiffs allege that the government assumed the enterprises' rights and obligations when the conservatorships were imposed, thus becoming a party to the contract. Appx85, Appx141-42. This Court rejected that very argument in *Fairholme*. *See* 26 F.4th at 1295. There, this Court held that FHFA "d[id] not retain its governmental character" when it succeeded to the enterprises' contracts with plaintiffs because "succeeding to the preexisting contracts … does not implicate any … governmental activity." *Id.* at 1295–96. Thus, the government did not become a counterparty to plaintiffs' contracts with the enterprises upon the imposition of the conservatorship, *see id.*, and cannot be sued on this basis. *See id.* at 1296 (The "government consents to be sued only by those with whom it has privity of contract." (quoting *Erickson Air Crane Co. of Wash. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984))).

Plaintiffs contend that their allegations differ from those in *Fairholme* because they allege that FHFA was acting in governmental capacity when it took actions that purportedly breached plaintiffs' contracts with the enterprises. Br. 58. Even if that

were true, it is irrelevant. The question is whether the government was in privity of contract with plaintiffs; specifically, the question is whether the imposition of the conservatorship and FHFA's succession as conservator to the enterprises' contractual rights rendered the government a party to the enterprises' contracts with shareholders. This Court held in *Fairholme* that the imposition of the conservatorship did not do so. Plaintiffs' breach of contract claims were properly dismissed.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims should be affirmed.

Respectfully submitted,

BRETT A. SHUMATE
*Acting Assistant Attorney General*
GERARD SINZDAK

/s/ *Kelsey Fraser*
KELSEY FRASER
*Attorneys, Appellate Staff*
*Civil Division, Room 7235*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-7824*
*kelsey.g.fraser@usdoj.gov*

February 2025

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.


/s/ Kelsey Fraser
Kelsey Fraser

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Circuit Rule 32(b)(1) because it contains 10,147 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Kelsey Fraser*
Kelsey Fraser