# United States Court of Appeals for the Federal Circuit

---

**MICHAEL E. KELLY, FBOP CORP., RIVER CAPITAL ADVISORS, INC., PARK NATIONAL BANK, SAN DIEGO NATIONAL BANK, PACIFIC NATIONAL BANK, BANKUSA, NORTH HOUSTON BANK, MADISON STATE BANK, COMMUNITY BANK OF LEMONT, CITIZENS NATIONAL BANK, CALIFORNIA NATIONAL BANK,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2042

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01949-MRS, Judge Molly R. Silfen.

---

Decided: July 17, 2026

---

ROBERT F. RUYAK, Larson LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by DANA MARIE HOWARD, Los Angeles, CA; ALLAN B. DIAMOND, Diamond McCarthy LLP, Houston, TX.

SIMON GREGORY JEROME, Appellate Staff, Civil Division, United States Department of Justice, Washington,

DC, argued for defendant-appellee. Also represented by CHARLES W. SCARBOROUGH, BRETT SHUMATE, Washington, DC.

---

Before DYK, REYNA, and TARANTO, *Circuit Judges*.

REYNA, *Circuit Judge*.

Michael Kelly, and several entities under his control, sued the government for breach of contract and an unconstitutional Fifth Amendment taking after he and his banks lost significant assets during the 2008 financial crisis. The United States Court of Federal Claims dismissed the complaint for lack of subject-matter jurisdiction. It reasoned that the complaint was filed after the six-year statute of limitations set forth in 28 U.S.C. § 2501 expired and that the deadline was not subject to the tolling rule established in *American Pipe & Construction Company v. Utah,* 414 U.S. 538 (1974). We affirm and hold that 28 U.S.C. § 2501 is not subject to *American Pipe* tolling. In doing so, we recognize that a portion of our decision in *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010) has been implicitly overruled by *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 582 U.S. 497 (2017).

BACKGROUND

A.

Appellants include Mr. Kelly and a group of banking entities and one non-banking entity under his control.[1]

---

[1] Mr. Kelly is the Chairman, Chief Executive Officer, and sole common shareholder of appellant, FBOP Corporation ("FBOP"). J.A. 87–88. FBOP is a privately owned bank holding company and the sole common shareholder of the other appellants—nine bank subsidiaries and one non-bank subsidiary. *Id.*

The government requires banks to have mandatory financial reserves, known as "Tier 1 Capital." These reserves are "the minimum adequate funds determined to be needed by a bank to function on a regular basis." J.A. 93–94 ¶ 36. A bank's failure to maintain enough Tier 1 Capital can result in insolvency, receivership, and confiscation of assets.

Starting in 2006, the government permitted banks to invest up to 100% of their Tier 1 Capital in preferred shares from government-sponsored enterprises ("GSE"). The government offered incentives, such as tax benefits, to banks that invested their Tier 1 Capital in GSE preferred shares.

The GSEs relevant to this appeal are Fannie Mae and Freddie Mac,[2] referred to here as the "Enterprises." The Enterprises were created by Congress to support the national home mortgage system, and they "operate under congressional charters as for-profit corporations owned by private shareholders." *Collins v. Yellen*, 594 U.S. 220, 228 (2021). The Enterprises buy mortgages, package them into mortgage-backed securities, and sell them to investors. *Id.* This process relieves mortgage lenders of risk and frees up their capital to make additional loans. *Id.* By 2007, the Enterprises amassed mortgage portfolios of approximately $5 trillion, accounting for almost half of the nation's mortgage market. *Id.*

In late 2007 and early 2008, appellants converted approximately $898 million of their Tier 1 Capital into preferred shares of the Enterprises. These investments were a "substantial portion" of appellants' Tier 1 Capital. J.A. 100 ¶ 50.

During this time, the mortgage crisis unfolded. "[W]hen the housing bubble burst in 2008, the

[2] Fannie Mae is the Federal National Mortgage Association. Freddie Mac is the Federal Home Loan Mortgage Corporation.

[Enterprises] took a sizeable hit" and "lost more that year than they had earned in the previous 37 years combined." *Collins*, 594 U.S. at 228. "[M]any feared the [Enterprises] would eventually default and throw the housing market into a tailspin." *Id.* at 229.

In response to these concerns, Congress enacted the Housing and Economic Recovery Act ("HERA") in July 2008. 12 U.S.C. §§ 4501–4642. In relevant part, HERA created the Federal Housing Finance Agency ("FHFA") "to regulate the [Enterprises] and, in certain specified circumstances, step in as their conservator or receiver." *Collins*, 594 U.S. at 229 (citing 12 U.S.C. §§ 4502(20), 4511(b), 4617). The statute provides that the FHFA "has the authority to take control of the [Enterprises'] assets and operations, conduct business on their behalf, and transfer or sell any of their assets or liabilities." *Id.* (citing 12 U.S.C. § 4617(b)(2)(B)–(C), (G)).

On September 6, 2008, FHFA exercised its authority and placed the Enterprises into a conservatorship.[3] The next day, FHFA entered into an agreement with the United States Department of the Treasury ("Treasury"), whereby Treasury agreed to provide the Enterprises with billions of dollars in capital and, in exchange, Treasury "received 1 million shares of specially created senior preferred stock" in each Enterprise. *Id.* at 232. The following day, the Enterprises' preferred share prices dropped significantly.

The drop in the Enterprises' share prices allegedly wiped out $885 million in appellants' Tier 1 Capital. Consequently, several of FBOP's subsidiary banks fell out of compliance with their Tier 1 Capital requirements. The

---

[3] Generally, a conservatorship is a legal process in which a person or entity is appointed to establish control and oversight of a company to put it in a solvent condition. *See generally* 12 U.S.C. § 4617(b).

government placed all FBOP's subsidiary banks into receiverships. This caused FBOP to become insolvent, forcing FBOP to liquidate its assets. Appellants alleged that they lost $19.4 billion in combined assets. Mr. Kelly allegedly lost his banks and nearly his entire net worth.

B.

Appellants sued the government in the United States Court of Federal Claims ("Federal Claims Court"). J.A. 28–72. The complaint alleged an illegal exaction and an unlawful taking in violation of the Fifth Amendment, and a breach of an implied regulatory contract. The complaint maintained that "[w]hen the Government nationalized the GSEs, it confiscated Appellant Banks' mandatory capital reserves, causing regulatory insolvency and the taking of all of Appellant Banks' property, *in toto*—leaving them utterly assetless." Appellants' Br. 2.

The complaint acknowledged that a "six-year statute of limitations [from 28 U.S.C. § 2501] governs the timeliness of Plaintiffs' claims," but it alleged that the statute of limitations was tolled between June 10, 2013 (the date a related class action, *Washington Federal v. United States*, was filed in the Federal Claims Court) and July 16, 2020 (the date the Federal Claims Court in *Washington Federal* unsealed its Opinion and Order dismissing that action). J.A. 63.

About two months after the complaint was filed, the parties jointly moved to stay the proceedings pending final disposition of *Washington Federal*, a case that was pending before our court. The parties' joint motion explained that this court's decision in the *Washington Federal* appeal would provide clarity on the "critical threshold issues" raised by the complaint—whether the Federal Claims Court has jurisdiction to hear shareholder challenges to the conservatorships that FHFA imposed on the Enterprises. J.A. 73. The Federal Claims Court granted the motion, and

the case was stayed pending resolution of *Washington Federal*.

In *Washington Federal*, a group of Enterprise shareholders filed a class action before the Federal Claims Court alleging an illegal exaction and a taking under the Fifth Amendment. *Wash. Fed. v. United States*, 149 Fed. Cl. 281, 288–89 (2020). The putative class included persons or entities who held shares of stock in the Enterprises on or before September 5, 2008. *Id.* The shareholders argued that imposition of conservatorships over the Enterprises destroyed the rights and value of the property interests tied to the stock of the Enterprises held by plaintiffs. *Id.* The government moved to dismiss the complaint, arguing the Federal Claims Court lacked subject-matter jurisdiction, the shareholders lacked standing to pursue their claims, and the shareholders failed to state a claim upon which relief may be granted. *Id.* at 285. The Federal Claims Court dismissed the complaint for lack of standing. *Id.* at 297.

On appeal, this court affirmed. *Wash. Fed. v. United States*, 26 F.4th 1253, 1270 (Fed. Cir. 2022). First, we explained that "an illegal exaction claim predicated on the alleged unlawfulness of the agency action is not plausible as a matter of law." *Id.* at 1263–64. On the takings claim, we identified two independent grounds for dismissal: (1) plaintiffs failed to state a claim because there was no cognizable taking, i.e., shareholders did not retain "any investment-backed expectation that the value of their shares would not be diluted;" and (2) plaintiffs lacked standing because their "alleged injuries are not independent of the alleged harms" to the Enterprises. *Id.* at 1265–70.

After this court's opinion in *Washington Federal*, appellants amended their complaint. The amended complaint omitted the illegal exaction claim, added facts to the contract claim, and aimed to bolster standing. The amended complaint included the same tolling allegation described in

the original complaint, that the relevant statute of limitations was tolled during the *Washington Federal* litigation. J.A. 87.

The government moved to dismiss the amended complaint for lack of subject-matter jurisdiction and for failure to state a claim. In May 2024, the Federal Claims Court granted the motion and dismissed the complaint. The Federal Claims Court concluded that it lacked jurisdiction because the complaint was time-barred under the six-year statute of limitations set by 28 U.S.C. § 2501. J.A. 6. It reasoned that the § 2501 statute of limitations is not subject to equitable tolling, so it concluded the *Washington Federal* litigation did not toll the deadline to file suit in this case. J.A. 6–11. The Federal Claims Court also explained that, even if the complaint was timely, it failed to state a claim. J.A. 11–18.

Mr. Kelly and his entities appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## Standard of Review

We review de novo the Federal Claims Court's dismissal for lack of subject-matter jurisdiction and for failure to state a claim. *Walby v. United States*, 957 F.3d 1295, 1298 (Fed. Cir. 2020).

## Discussion

Generally, Federal Claims Court jurisdiction is provided in the Tucker Act, 28 U.S.C. § 1491. The Tucker Act waives government sovereign immunity and provides the Federal Claims Court with subject-matter jurisdiction "for certain damages suits" against the government. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020).

Claims brought under the Tucker Act are subject to the six-year statute of limitations in 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred

unless the petition thereon is filed within six years after such claim first accrues."

There is no dispute that appellants' complaint was filed after the § 2501 six-year deadline. Appellants do not challenge on appeal the Federal Claims Court's determination that appellants' claims accrued on September 6, 2008, when the government placed the Enterprises into conservatorships. This means that the deadline to file was September 6, 2014. Appellants sued on October 1, 2021—thirteen years after September 6, 2008.

Appellants argue that their complaint was timely because, as putative class members of the *Washington Federal* class, the § 2501 deadline was tolled while the *Washington Federal* litigation was pending. The complaint in *Washington Federal* was filed on June 10, 2013, which was prior to appellants' deadline to file suit in this case. The *Washington Federal* litigation ended when the complaint was dismissed on July 16, 2020. Appellants contend that their filing deadline in this case was tolled for this period, between June 10, 2013, and July 16, 2020. With tolling, appellants contend that they had until October 3, 2021 to file suit, and they filed two days before that deadline.

Appellants rely on the tolling principles expressed in the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and its progeny. The Supreme Court has explained that "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails." *China Agritech v. Resh*, 584 U.S. 732, 736 (2018). This class action tolling rule is generally known as *American Pipe* tolling.

The issue before us is whether 28 U.S.C. § 2501 is subject to *American Pipe* tolling—specifically, whether the applicable limitation period was tolled during the pendency of *Washington Federal*. We conclude that it was not.

A.

Appellants argue that their complaint was timely filed because § 2501 is not jurisdictional and thus subject to *American Pipe* tolling.

A determination that a filing deadline is "jurisdictional" poses significant consequences. If a jurisdictional deadline is missed, a court is "completely powerless to take any relevant action." *McIntosh v. United States*, 601 U.S. 330, 337 (2024). "Put differently, noncompliance with a jurisdictional deadline cannot be excused." *Id.*

The Supreme Court and this court have recognized that 28 U.S.C. § 2501 is jurisdictional and not subject to equitable tolling. In *Sand*, the Supreme Court described the § 2501 limitations period as "jurisdictional," the type of time limit "forbidding a court to consider whether certain equitable considerations warrant extending a limitations period." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133–34 (2008). The Supreme Court has since acknowledged *Sand*'s conclusion. *E.g.*, *United States v. Wong*, 575 U.S. 402, 413–16 (2015) ("[T]his Court repeatedly held [§ 2501's] 6-year limit to be jurisdictional and thus not subject to equitable tolling."). So too has our precedent. *E.g.*, *Wyo. Tr. Co. v. United States*, 168 F.4th 1377, 1381 (Fed. Cir. 2026) ("Equitable tolling does not apply because 28 U.S.C. § 2501's time-bar is jurisdictional."); *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) ("[T]he Supreme Court decided *Sand*, holding that the statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is jurisdictional and not susceptible to equitable tolling." (citation modified)).

Subsequent to *Sand*, the Supreme Court in *Harrow* explained that a filing deadline is "jurisdictional only if Congress 'clearly states' that it is." *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024) (quoting *Boechler v. Comm'r*, 596 U.S. 199, 203 (2022)). The Court explained that for a statute to pass the clear-statement test, "traditional tools

of statutory construction must plainly show that Congress imbued the rule with jurisdictional consequences." *Id.* (citation modified). The Court explained that "most time bars are nonjurisdictional." *Id.* (internal quotation omitted). It recognized one "exceptional" deadline that is jurisdictional—the deadline for filing an appeal from a district court's decision in a civil case. *Id.* at 484, 488 (citing *Bowles v. Russell*, 551 U.S. 205 (2007)). The Court stated, "[a]s to all other time bars, we now demand a 'clear statement.'" *Id.* at 489.

Seizing on *Harrow*, appellants argue that the announcement of a clear-statement requirement supersedes the Supreme Court's earlier statement in *Sand*, that § 2501 is jurisdictional. Specifically, appellants argue that because *Sand* did not apply the clear-statement test, "this Court must now do so in the first instance." Appellants' Br. 19. Appellants contend that because § 2501 fails the clear-statement test, the statute is not jurisdictional. We disagree.

While appellants are correct that *Sand* did not expressly examine § 2501 under the clear-statement test, we cannot turn a blind eye to the fact that *Sand* involved the same statute at issue here, § 2501. *Sand*, 552 U.S. at 137–39. In contrast, the Supreme Court in *Harrow* analyzed a different, unrelated statute.[4] *Harrow*, 601 U.S. at 488–89. To the extent that there is a conflict between *Sand* and *Harrow*, it is for the Supreme Court, not this court, to resolve. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) ("As this Court has explained: If a precedent of this Court has direct application in a case . . . a lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

---

[4] *Harrow* addressed 5 U.S.C. § 7703(b)(1), which sets a 60-day deadline for employees to appeal a decision from the U.S. Merit Systems Protection Board to this court.

(citation modified)). Because *Sand* addressed the statute at issue here, we are bound to follow its direction that § 2501 is jurisdictional and not subject to equitable tolling. *Id.* We thus reject appellants' contention that we disregard *Sand*.

B.

Appellants argue that, even if § 2501 is jurisdictional, *American Pipe* tolling is still available. In support, appellants point to *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010), where we held "that the running of the six-year limitations period of 28 U.S.C. § 2501 was tolled" under *American Pipe*. *Bright*, 603 F.3d at 1290.

In *Bright*, we recognized two types of tolling: equitable tolling and class action statutory tolling. *Id.* at 1287–88. We explained that "the fact that equitable tolling is barred under section 2501 does not mean that class action statutory tolling also is barred" because the "two concepts are different." *Id.* at 1287. We characterized *American Pipe* tolling as "class action statutory tolling" because it does not "turn on 'equities'" and "is not triggered by equitable considerations" but rather "serves to facilitate the objectives of the class action procedure." *Id.* at 1288 (citation modified). On this basis, we concluded that *American Pipe* tolling was available under § 2501. *Id.* at 1290.

After *Bright*, the Supreme Court clarified that *American Pipe* tolling is equitable tolling. *Calif. Pub. Emp. Ret. Sys. v. ANZ Sec.*, 582 U.S. 497, 509–10 (2017) ("*CalPERS*"). In *CalPERS*, the Supreme Court concluded that a deadline set by the Securities Act of 1933, a statute of repose, could not be tolled under *American Pipe*. *Id.* at 504–06. In reaching this conclusion, the Court explained that the "source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, rather than to interpret and enforce statutory provisions." *Id.* at 509. The Court confirmed that a statute or federal rule was not the basis for the *American Pipe* tolling rule. *Id.* ("The central text at

issue in *American Pipe* was [Federal Rule of Civil Procedure] 23, and Rule 23 does not so much as mention the extension or suspension of statutory time bars."). Thus, *CalPERS* established that *American Pipe* tolling is equitable.[5]

Appellants contend that "*CalPERS* did not abrogate *Bright*" because *CalPERS* dealt with a statute of repose rather than a statute of limitations. Appellants' Br. 32. This distinction is immaterial. The relevant part of *CalPERS*—the declaration that *American Pipe* tolling is equitable—did not hinge on the type of statute being tolled. *CalPERS*, 582 U.S. at 509–10.

Turning to the case at hand, we note that "a later panel can recognize that [this] court's earlier decision has been implicitly overruled as inconsistent with intervening Supreme Court authority." *Troy v. Samson Mfg. Corp.*, 758 F.3d 1322, 1326 (Fed. Cir. 2014). We do so here. The portion of *Bright* which concluded that *American Pipe* tolling is available under § 2501 because such tolling is not equitable is inconsistent with *CalPERS* which declared that *American Pipe* tolling is equitable. *Compare Bright*, 603 F.3d at 1288 ("such tolling is not triggered by equitable considerations"), *with CalPERS*, 582 U.S. at 509 ("the

[5] Since *CalPERS*, the Supreme Court and other circuits have reinforced *CalPERS*'s declaration that *American Pipe* tolling is equitable. *E.g.*, *China Agritech*, 584 U.S. at 745 (noting "[t]he class action would be untimely unless saved by *American Pipe*'s equitable-tolling exception"); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609 (3d Cir. 2018) (noting "[t]he Supreme Court has since clarified that *American Pipe* tolling is an equitable remedy"); *Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369, 371 (6th Cir. 2021) (noting "the Supreme Court has established *American Pipe* tolling, an equitable doctrine").

source of the tolling rule applied in *American Pipe* is the judicial power to promote equity").

Accordingly, we hold that the six-year statute of limitations found in § 2501 is jurisdictional and not subject to equitable tolling, such as *American Pipe* tolling. *Sand*, 552 U.S. at 135–39; *CalPERS,* 582 U.S. at 509. As a result, appellants' complaint was untimely filed.

We need not reach the Federal Claims Court's alternative ground of dismissal for failure to state a claim.

## CONCLUSION

We have considered appellants' remaining arguments and find them without merit. Because we hold that 28 U.S.C. § 2501 is jurisdictional and not subject to *American Pipe* tolling, appellants' limitations period was not tolled during the pendency of the *Washington Federal* litigation. For these reasons, we affirm the Federal Claims Court's dismissal of appellants' complaint as time-barred.

## AFFIRMED

## COSTS

No costs.